1          **UNITED STATES DISTRICT COURT**

2             **DISTRICT OF NEVADA**

3     **THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING**

4

5

6    MARK B. KABINS,

7          Plaintiff,

8    vs.                          **NO. 2:11-CV-1742-JCM-RJJ**

9    KATHLEEN SEBELIUS,              **MOTION HEARING**

10         Defendant.
       _____/

11

12

13         **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14          TUESDAY, SEPTEMBER 25, 2012

15               10:00 A.M.

16

17

18    **APPEARANCES:**

19    For the Plaintiff:    DAVID CHESNOFF, ESQ.
                            RICHARD SCHONFELD, ESQ.
20                          SARALIENE DURRETT, ESQ.

21    For the Defendant:    ROGER WENTHE, ESQ.
                            JILL WRIGHT, ESQ.

22

23

24

25    Reported by:  Joy Garner, CCR 275
                     Official Federal Court Reporter

1    LAS VEGAS, NEVADA, TUESDAY, SEPTEMBER 25, 2012

2                    10:00 A.M.

3                  *    *    *

4              P R O C E E D I N G S

5

6         THE CLERK:  Mark Kabins versus Kathleen

7    Sebelius, 2:11-CV-1742-JCM-RJJ.  This is the time

8    set for a motion hearing.

9              Counsel, please note your

10   appearances.

11        THE COURT:  Mr. Chesnoff.

12        MR. CHESNOFF:  Good morning, your

13   Honor, David Chesnoff appearing with my client,

14   Dr. Kabins, along with Richard Schonfeld and

15   Saraliene Durrett of my office.

16        THE COURT:  All right, thank you.

17        MR. WENTHE:  Your Honor, Roger Wenthe

18   on behalf of the United States, and with me is

19   Jill Wright who is an attorney with the

20   Department of Health and Human Services Office

21   and counsel for the Inspector General.

22        THE COURT:  All right, thank you.

23              All right, I've reviewed this

24   with my brain trust.  Let me tell you what I'm

25   inclined to do and then I'll give everyone a

1    chance to argue as you see fit.  We've all heard

2    the saying, hard cases make bad law, and this is

3    a hard case.  At various times over the last

4    twenty-four hours, I've been I'm going to rule

5    this way, and then I'll look at the case, look at

6    this again, the facts here, I'm going to rule the

7    other way.  So I've gone back and forth on this

8    with my brain trust.  This is an interesting

9    case, but it's certainly not clear-cut in my

10   mind.

11                 You pronounce your last name

12   Kay-bins (phonetic), right, Doctor?

13                 THE PLAINTIFF:  Correct.

14                 THE COURT:  I didn't want to

15   mispronounce your name.  There's nothing more

16   irritating than have somebody mispronounce your

17   name continually.  First of all, Dr. Kabins had

18   been convicted of a crime, you know, and so let's

19   put that on the table and that's a terrible thing

20   and you can say whatever you want to about that,

21   but put that on the shelf.  That's just a given.

22   He's been excluded here by the Secretary Sebelius

23   under the exclusion statute.

24                 It seems to me the purpose of

25   the exclusion statute is to protect the

1   government from people who have cheated the

2   government program, and you see if you look at

3   the -- I've had the brain trust look at some of

4   the people who have been excluded, and if

5   somebody committed an actual fraud or

6   embezzlement or some sort of thing like that,

7   cheating a government program, it's a --

8                   And let me have a fictional Dr.

9   Mahan who sets up his practice and, you know,

10  rips off Medicare and embezzles or overcharges,

11  or whatever, and so he pleads guilty to some

12  crime and serves a couple of years in jail, and

13  then he's out again.  And so Dr. Mahan's uncle is

14  the Chairman of the State Medical Board, or

15  whatever, so he gets re-licensed and he says,

16  okay, Secretary Sebelius, you have to deal with

17  me again.

18                  Do we really?  Do we really have

19  to?  It's almost like fool me once, shame on you;

20  fool me twice, shame on me.  The government still

21  has to deal with this guy?  And that's what the

22  statute I think is designed to prevent that if

23  somebody -- you're just an embezzler, or cheater,

24  or whatever, and the government can exclude, but

25  that's the way the statute is.

1                    Let me give you another example
2    again with Dr. Mahan.  He sells his house, and he
3    sells the house and commits a fraud in selling
4    the house, misrepresents something.  Can he be
5    excluded under the statute?  No, because the
6    statute is drawn so that it's got to be in
7    connection with health care services.  I'll get
8    into that in just a minute more, but so Dr. Mahan
9    commits a fraud selling his house.  That doesn't
10   give the grounds to the Secretary to exclude him.
11                   Now, here Dr. Kabins was
12   convicted of misprision and failure to report a
13   felony.  If you look at the -- the -- well, first
14   of all, look at the statute, the exclusion
15   statute and the regulations that the Secretary
16   has promulgated, the statute didn't say is a
17   little bit unwieldy which is so unusual to think
18   that the congress people would draft an unwieldy
19   statute, but if you look at the regulations, I
20   think they pretty clearly follow the statute.
21                   We've got four requirements and
22   so everybody understands I'm speaking now from 42
23   CFR, Section 1001.101(c).  Four requirements:
24   The individual must have been convicted of a
25   felony, and that's true of Dr. Kabins here; the

1    felonious conduct must have occurred after August

2    21, 1996, that's true here.  So we're really

3    focusing on the third and fourth elements.  The

4    felony offense must have been related to fraud,

5    theft, embezzlement, breach of fiduciary

6    responsibility, or other financial misconduct,

7    and the felony offense -- number four, the felony

8    offense must have been in connection with the

9    delivery of a health care item or service.

10                   And if you look at what happened

11   here, at Dr. Kabins's conduct here, the

12   misprision was committed in connection with legal

13   services, not medical services.  This occurred

14   well after the medical services were rendered and

15   all indications are that there's no complaint

16   about the medical services.  And I say that

17   somewhat advisedly because after the fact, you

18   know, people's memories is better -- and I

19   shouldn't say is better -- may have been altered

20   by subsequent events.

21                   For example, if Dr. Kabins, and

22   I don't know this, but if he settled on the side

23   with Ms. Simon, and I don't know whether that

24   happened or not, but suddenly she says, oh, that

25   terrible Dr. Kabins.  And then, oh, yes, he was

1  wonderful and, yes, all his services were

2  wonderful and blah, blah, blah.

3              I mean so put that aside.  I

4  mean I understand the credibility of witnesses is

5  questionable in something like this, but it

6  appears that the medical services were fine.

7  There's no question about the quality of the

8  medical services.  So the misprision occurred

9  with legal services, not medical services.

10             Now, the -- you can go with the

11  regulations rather than the statute, but it just

12  is clearer.  The felony offense must have been

13  related to fraud, theft, embezzlement, breach of

14  fiduciary responsibility, or financial

15  misconduct.  This was, like I say, it was legal

16  services.  I don't know that -- however you want

17  to characterize it, fraud, and certainly fraud, I

18  don't know, maybe.  No theft, embezzlement,

19  breach of fiduciary responsibility, it may be, or

20  other financial misconduct.  So number three is a

21  maybe.

22             Number four, the felony offense

23  must have been in connection with the delivery of

24  a health care item or service, and here it's just

25  not.  I mean there's a medical service underlying

1   everything, of course, because he's a doctor and

2   that's what we're dealing with, but I just don't

3   see that the exclusion statute applies here.  I'm

4   concerned a little bit, too, about selective

5   prosecution.

6               If we had a case where every

7   doctor who's convicted of a felony is subject to

8   exclusion, then, you know, here we go.  I'm

9   sorry, Doctor, but that's the way it works, or

10  whatever, you deal with that and you have

11  different arguments I'm sure, but I'm concerned,

12  too, about selective prosecution that a

13  bureaucrat somewhere decides here's what we're

14  going to do, we're going to do this, we're going

15  to do that.  We're going to prosecute this

16  doctor, not that doctor, and that's always

17  troubling to the Court if there's no uniformity

18  with the decision to prosecute.

19              Let's see, that's the memo in

20  support of your motion for summary judgment, the

21  plaintiff, and then at page 20 you list some

22  doctors that plead guilty to -- here's one the

23  misprision, the various felonies, and they were

24  not -- they were not excluded.  And what's the

25  rational basis for excluding Dr. Kabins?  I just

1    don't see it anywhere.  So honestly this is a

2    close question in my mind.  I've gone back and

3    forth on it, but I just -- I come back to I think

4    it's the misprision was in connection with

5    rendering of legal services or providing legal

6    services and not the medical services.

7                 There was no question -- I

8    haven't seen any question at all about the

9    medical services.  They apparently were

10   appropriate and certainly Ms. Simon is not

11   complaining about that, although that doesn't

12   carry the day.  As I've said, you know, it's a

13   matter of credibility and we can say, well, I

14   don't believe her, but I had the brain trust

15   quickly try to identify doctors who had been

16   excluded and they had been doctors who, like I

17   said at the very beginning, like our fictional

18   Dr. Mahan who committed overcharging or

19   embezzlement or theft of some sort from the

20   Medicare program, but it seems to me that Dr.

21   Kabins's conduct here, his conviction here, was

22   not related to fraud or other misconduct in

23   connection with revision of a medical service.

24   So what I'm inclined to do is to grant summary

25   judgment to the plaintiff.

1                    Now, I'll give you -- do you
2    want to talk me out of that, Mr. Chesnoff?
3               MR. CHESNOFF:  I was just going to say,
4    your Honor, I don't want to talk -- we worked
5    very hard, my colleagues, on the pleadings and
6    obviously you've studied them along with your
7    staff, so I don't want to talk myself out.  I
8    think the only thing that I would add is this,
9    your Honor.  I think that one of the things that
10   really pushes it to our direction is that this
11   court through Judge Quackenbush, who I consider
12   one of the finest jurists I've ever appeared in
13   front of in all my years, has specifically said
14   on several occasions pointedly that what Dr.
15   Kabins was convicted of had nothing to do with a
16   health care violation, and he was the finder of
17   fact as to the plea and as to the companion
18   cases.
19                    And why that's so important,
20   your Honor, is he went out of his way to say that
21   he wanted Dr. Kabins to continue to provide
22   medical services to the people of the state of
23   Nevada and to allow an uncontrolled federal
24   bureaucrat to basically disregard the clear
25   statutory elemental requirements and you, as a

1   sitting federal judge, and me who practices an

2   area of the law where the elements are crucial,

3   then unless those elements are met, your decision

4   is righteous and clear and it is completely

5   consistent with what Dr. Kabins pled to.

6                    And as you said, the legislative

7   intent here was not to punish a doctor who

8   committed an -- did an operation well before the

9   honest service fraud occurred and involved legal,

10  not medical and, therefore, this kind of knee

11  jerk reaction that Dr. Kabins received and

12  basically kicking sand in the face of Judge

13  Quackenbush who pointedly, pointedly, wanted Dr.

14  Kabins to do what he does which is to serve

15  people.

16                    The effect of what the Secretary

17  did here doesn't just mean that Dr. Kabins

18  doesn't get paid from Medicare and Medicaid.  It

19  has a real affect on his entire practice,

20  including his right to practice in certain

21  hospitals.  So the Court would be following the

22  direction of two branches of government, the

23  legislative in enacting the law, and your brother

24  judge in his interpretation of what this

25  conviction meant.

1                      So with that said, your Honor, I

2    don't believe under any standard proffered by the

3    Secretary they meet the elemental requirement to

4    have banned him, and I ask that you put your

5    imprimatur on what you've indicated is your

6    intention, your Honor.

7              THE COURT:  All right.

8              MR. CHESNOFF:  Thank you.

9              THE COURT:  And I'll just say if Judge

10   Quackenbush had found to the contrary, he didn't

11   look at this as closely as I did.  I mean I'm

12   glad that we agree with each other, but I looked

13   at it independently and closely.

14                 Mr. Wenthe, I'll be glad to hear

15   anything you have to say, sir.

16             MR. WENTHE:  Thank you, your Honor.

17             THE COURT:  Yes, sir.

18             MR. WENTHE:  I think that what's

19   necessary here is to return to the first

20   principle of why this statute exists.  Congress

21   enacted this exclusion statute because Congress

22   can decide who the federal government will do

23   business with and who it will not do business

24   with, and this provision that we're dealing with

25   today was added in 1996 because the existing

1    provisions were considered not broad enough to

2    cover the types of people who the government does

3    not want to do business with.

4                        Before 1996, it already had a

5    provision separate from this one that says

6    anybody who defrauds the Medicare program or

7    overcharges the Medicare program will be

8    excluded, must be excluded.  This provision was

9    added because that wasn't broad enough so that

10   what you maybe have had your brain trust look at

11   is cases under that previously existing, and

12   still existing, provision.

13                        This provision was added so that

14   anyone who commits any kind of -- and not just

15   fraud -- but, as you said --

16        THE COURT:  -- theft, or embezzlement,

17   or other financial misconduct, or breach of

18   fiduciary duty.

19        MR. WENTHE:  There we go -- and breach

20   of fiduciary duty.

21        THE COURT:  Yeah.

22        MR. WENTHE:  That's a very broad range

23   of things, and we have to ask ourselves how can

24   those things occur in connection with the

25   delivery of a health care item or service because

1    that's the other thing you have to have.  And I

2    think if you're going to read this statute to say

3    the health care item or service has to come after

4    the fraud, or embezzlement, or theft, or

5    whatever, which is what I think you're saying.

6              THE COURT:  But, no, no, no, it's got

7    to come in connection with that.  The way I read

8    the statute, Mr. Wenthe, is the fraud, or theft,

9    or embezzlement has to come in connection with

10   the provision of a medical service.

11             MR. WENTHE:  In connection with --

12             THE COURT:  Here it occurred well after

13   the provision of the medical service.

14             MR. WENTHE:  And Congress was

15   deliberately broad by using the words "in

16   connection with."  What you were saying is that

17   you're --

18             THE COURT:  And I agree.  I mean that's

19   very broad language and we look at the statute

20   "in connection with" as very broad, but it's got

21   to be in connection with the provision of the

22   medical service.  This occurred -- here it

23   occurred well after, did it not, well after the

24   medical service was provided?

25             MR. WENTHE:  But, see, when you're

```
1    saying well after, then you're saying in
2    connection with only means before the medical
3    service is provided.
4            THE COURT: No, no, to me it means
5    contemporaneously generally, and I can't say -- I
6    mean it's possible that it would arise -- some
7    fraud would arise later. I mean, for example,
8    with billing. For example, let's say that --
9    we'll go back to Dr. Mahan. Dr. Mahan performs a
10   service and then he doesn't bill for it for three
11   months, but there's some -- some -- he
12   overcharges, he triple bills or something three
13   months later, is that -- but it's in connection
14   with the provision of the medical service. So I
15   mean the temporal aspect of the time aspect of it
16   is not necessarily controlling.
17                There's got to be a connection
18   with the provision of the medical service not
19   something related to a medical service because
20   that way everything a doctor did would be open to
21   question. For example, Dr. Mahan selling his
22   house and committing a fraud there, you know,
23   overcharging somebody or hiding a defect on a
24   house or something of that nature. You agree, do
25   you not, that Dr. Mahan selling his house and
```

1    committing a fraud the Secretary can't be

2    excluded --

3              MR. WENTHE:  Because there's no medical

4    service anywhere in that scenario, your Honor.

5              THE COURT:  That's right.  He's a

6    doctor, but there's no medical service there.

7              MR. WENTHE:  Now, the very question we

8    are discussing right now is one that the Court is

9    foreclosed from getting into.  The Court cannot

10   substitute its judgment for that of the agency on

11   this question.  This is a question of statutory

12   interpretation, and your Honor wants to construe

13   "in connection with" to mean very closely related

14   in time.

15             THE COURT:  No, no, that's not

16   necessarily true, Mr. Wenthe.

17             MR. WENTHE:  That's just what you said

18   to me, your Honor, and the agency has said --

19             THE COURT:  Well, wait, wait, wait,

20   don't mischaracterize what I'm saying or doing.

21   I didn't say that it had to be very closely

22   related in time, did I?

23             MR. WENTHE:  Yes, you did, but go ahead

24   and tell me what -- what you --

25             THE COURT:  No, I did not.  I most

1   certainly did not and don't mischaracterize what

2   I say.

3              MR. WENTHE:  Tell me what you think the

4   statute means, your Honor.

5              THE COURT:  Well, I've told you that

6   already, Mr. Wenthe, and I'm not going to have

7   you mischaracterize what I said.  We said that it

8   could be three months later, didn't I?  Were you

9   listening?  Don't smirk at me.  Don't smirk at

10  me, Mr. Wenthe.

11             MR. WENTHE:  I'm smiling at you, your

12  Honor.

13             THE COURT:  What?  What?  Don't smirk

14  at me.  You're going to be in trouble, sir.

15  We're in recess.

16                  (Recess taken from

17                  10:20 a.m. to 10:25 a.m.)

18             THE COURT:  We are back in session.

19  Thank you.  You may be seated.

20                  All right, resume your argument,

21  Mr. Wenthe.

22             MR. WENTHE:  I apologize to the Court.

23  I meant no disrespect.

24             THE COURT:  Well, it certainly appeared

25  disrespectful.  Contentious, that's the way it

```
1   appeared, Mr. Wenthe.  Smirk away all you want.
2   Now go ahead and let me hear the rest of your
3   argument and smirk all you want.
4            MR. WENTHE:  I mean no disrespect to
5   the Court.
6            THE COURT:  Yes, you do.  You most
7   certainly do.  You were smirking at me.  You
8   mischaracterized what I said.  That's fine.
9   Continue your argument.
10           MR. WENTHE:  The agency has construed
11  the words "in connection with" over the course of
12  many years and they have applied that
13  construction over and over and over, and they are
14  permitted by Congress and by case law to do so.
15  Their construction of those words "in connection
16  with" means a common sense connection.  They
17  found in this case that the health care service
18  provided by Dr. Kabins which was a service
19  performed on Melodie Simon for which he admitted
20  in his plea agreement that he could be held to
21  have committed malpractice by a viable lawsuit by
22  her.  He admitted that.
23           THE COURT:  Well, he disagrees.  He
24  disagrees with what you're saying, but that's
25  fine.  Go ahead.  It's your argument.
```

1              MR. WENTHE:  It is my argument, and it
2   is his admission and your Honor will find his
3   admissions in his plea agreement which begins at
4   page 777 of the record and in particular the
5   facts admitted under oath by him which begin at
6   784 of the record and in Subparagraph (d) of
7   those facts appears this statement:  Accordingly,
8   Dr. Kabins believed that Ms. Simon could bring a
9   viable lawsuit against him arising out of
10  provision of a health care item or service to
11  her.  And he escaped being sued for malpractice
12  by covering up the fraud committed by Howard
13  Awand and Noel Gage to which he also pled that he
14  acknowledged that those men had committed the
15  crime of fraud and that he concealed it.
16              So there is in the agency's view
17  a common sense connection between his provision
18  of that health care service for which he could
19  have been sued for malpractice and his
20  concealment and his conviction for concealment of
21  the fact of fraud that got him out of being sued
22  for malpractice for that health care item for
23  service.
24              The agency decided in its --
25  both its administrative law judge decided and its

1    DAB, Department Appeals Board, that construing

2    its statute as it had for many, many years "in

3    connection with" was satisfied in this case.  The

4    Court wishes to adopt a different interpretation

5    of the words "in connection with" than what the

6    agency has adopted.  The Court is not permitted

7    to do so by the doctrine of Chevron deference.

8                    When the agency has an ambiguous

9    statute to apply, the agency is afforded the

10   discretion to choose within that range of

11   reasonable constructions of that statute which

12   one it will apply and it has done so.  The Court

13   apparently is saying that the construction by the

14   agency here is completely outside that reasonable

15   range of reasonable interpretations of the words

16   "in connection with."

17                    That seems highly unlikely since

18   we have cited to you the Supreme Court's case of

19   Morales in which the Supreme Court construed the

20   words "in connection with" and relating to the

21   statute and gave them the exact same meaning that

22   the agency gives them and has given those words

23   for many years.  And so if the Court disagrees

24   with the Supreme Court's Morales decision and

25   wishes to overrule it --

1        THE COURT:  Okay, cut it again, cut the

2   crap, cut the contentious attitude, all right?

3   I'm not going to overrule the Supreme Court.  Do

4   you really think I'm going to overrule the

5   Supreme Court, Mr. Wenthe?  I can't hear you.

6        MR. WENTHE:  Of course not, of course

7   not, of course not.

8        THE COURT:  What are you arguing --

9   nothing -- your whole attitude today has been

10  nothing but contentious.

11       MR. WENTHE:  That's incorrect, your

12  Honor.

13       THE COURT:  No, that's not incorrect,

14  sir.  Nothing but contentious.  You mean I'm

15  going to overrule the Supreme Court.  Don't be

16  stupid.

17       MR. WENTHE:  And that's the point.

18       THE COURT:  Try to make an argument

19  that's coherent and not -- you sound like a

20  little kid on the playground.  I've indicated I

21  might not rule in your favor and so you give a

22  boo-hoo-hoo and try to -- yeah, go ahead and

23  smirk some more.  That's funny.  Go ahead, go

24  ahead, let me hear some more of your argument.

25       MR. WENTHE:  I think that I've stated

1    it as clearly as I can.  The agency --

2             THE COURT:  But you say your contempt

3    very clearly.  That's what you did.  Go ahead.

4             MR. WENTHE:  The agency has decided

5    what these words mean.

6             THE COURT:  So I can't question the

7    agency.  I have to just bow down to the agency

8    and rubber stamp it.  That's Mr. Wenthe's

9    position.  Anything else?  That's what you just

10   told me.  I'm bound by that.  I can't question

11   that at all.  Now what's your next argument?

12            MR. WENTHE:  I think, your Honor, that

13   if anyone reads the record here, they will never

14   see the words bow down coming out of my mouth.

15   They came only out of yours.  Now, the other

16   point that has to be dealt with here that

17   apparently has already -- well, it was not

18   addressed by anybody yet today -- and that's

19   relating to, this conviction has to be relating

20   to fraud.  I don't see how that could be

21   questioned here.  The conviction was for

22   concealment of a fraud.

23                 So the only argument really that

24   Dr. Kabins has to oppose that is to say that we

25   have to read the statute so that fraud only

1   involves financial misconduct fraud and,

2   therefore, because this is not a financial

3   misconduct case, this is not a conviction

4   relating to fraud.  I don't see that.  I think

5   that -- and particularly not when we have the

6   Friedman versus Sebelius case which was just

7   decided by the DC Circuit Court of Appeals this

8   year, and we offered that to you in our

9   supplemental authorities.

10              It went through a very lengthy

11  discussion of the purpose, history, and text of

12  the statute and said, no, Congress did not mean

13  to restrict this statute to just financial

14  misconduct fraud.  It's any kind of fraud.  And

15  so it would be improper to read the statute that

16  way as Dr. Kabins wants to and so we think that

17  part of it is satisfied.  And really that's the

18  only two issues that there are here having the in

19  connection with health care item or service and

20  had to be relating to fraud.

21              Those were the two contested

22  issues before the agency, and they are the only

23  two issues here and for the reasons we've stated

24  we feel they are both satisfied very amply here

25  when the statute is read in accordance with

1   Chevron deference which applies to agency

2   interpretations of their own statutes when they

3   are ambiguous.  So if the Court has no other

4   questions, that's all I have.

5            THE COURT:  All right.  Thank you.

6                 Ma'am, did you have anything or

7   any argument you wanted to make?

8            MR. WENTHE:  Are you asking counsel?

9            MS. WRIGHT:  No, sir, I don't.

10           THE COURT:  No?

11                All right, I'll give you a

12   chance to reply.

13           MR. CHESNOFF:  Just briefly, your

14   Honor.  In review of our pleadings, we were able

15   to distinguish the argument that they made about

16   Morales.  Morales doesn't apply.  As far as

17   Chevron goes, your Honor, the Supreme Court has

18   said you are allowed to decide whether it's

19   reasonable, and that's what I believe the Court

20   was attempting to do.

21                I would also point out as the

22   Court did when the Secretary stands up and says

23   that they've been applying this uniformly

24   regularly, one only has to look at the list of

25   doctors who we put in our pleadings who actually

1  were engaged in conduct involving medical

2  services.  Dr. Kabins has performed this surgery

3  long before and that's why the temporal argument

4  is so important, and he would have performed the

5  surgery regardless of any scheme -- excuse me,

6  I'm a little excited myself actually -- any

7  scheme that Gage and the other gentleman engaged

8  in.  He did the surgery.

9              It had nothing to do with their

10  scheme to commit item or service fraud which is

11  not a medical fraud and the statute also talks

12  about, and especially the Ninth Circuit, your

13  Honor, in the context of the fraud having a

14  financial component.  So for all the reasons that

15  we've stated in our brief and the arguments today

16  and the fact that the Secretary has relied on law

17  that's not appropriate, including the supplements

18  they filed, the Fourth Circuit case and the DC

19  Circuit case, those cases involve people who

20  actually engaged in the actual fraud themselves.

21              And we're aware one of the

22  elements that the Court has been focusing on was

23  consciously met by the people involved.  In our

24  case if you analyze the elements the Court

25  correctly stated that one and two exist, three is

1    questionable.  And, of course, we've argued it

2    doesn't apply or hasn't been met, but most

3    importantly element number four has never been

4    established as a basis for the really draconian

5    and isolated punishment that Dr. Kabins has

6    suffered totally inconsistent with the

7    Secretary's decisions in other doctors' cases.

8                    Thank you.

9               THE COURT:  All right.  Thank you.

10                   As I said at the beginning, it's

11   a close case.  Did you want to add something, Mr.

12   Wenthe?  Go ahead.

13              MR. WENTHE:  You know, I didn't get a

14   chance to talk about the other doctors.  Would

15   your Honor permit me?

16              THE COURT:  Of course.

17              MR. WENTHE:  Because your Honor did

18   raise that in your opening remarks and I wanted

19   to --

20              MR. CHESNOFF:  Actually the Secretary's

21   lawyer raised it by saying that they do this

22   fairly in all cases.

23              THE COURT:  Go ahead.

24              MR. WENTHE:  Fair enough, but this

25   whole question of other doctors who are getting

1 excluded, I do want to address that.  We did

2 address that in our briefs obviously, but I think

3 your Honor is looking at that as though there's

4 some unfairness going on.  The statute is

5 mandatory.  The statute is mandatory.  When we

6 find a doctor, and the doctor comes to our

7 attention and a hearing is held and all these

8 statutory elements are satisfied, that doctor

9 must be excluded.  The agency has no discretion

10 not to exclude him.

11          Now, the fact that other people

12 may be out there who haven't been caught yet, we

13 don't have an explanation for that.  The record

14 does not give us an explanation because the

15 agency excluded all of that evidence as being

16 irrelevant.  If your Honor feels that that issue

17 needs some more exploration by the agency that

18 they should take that into account that that is

19 relevant to their decision, then the thing to do

20 is to remand this to the agency for further

21 factual findings because they didn't make any

22 findings of fact on this.

23          They excluded it all as being

24 irrelevant, and I think they were right to

25 exclude it as irrelevant, but if you disagree

1    with that and feel that they should consider it,

2    it really is a matter for the agency to consider

3    on remand.  So I just wanted to make that one --

4             THE COURT:  All right.  Thank you.

5                      As I said at the outset, this is

6    to me a close question.  It's a very close

7    question, but I think on balance the plaintiff is

8    entitled to summary judgment.  So, if you would,

9    Mr. Chesnoff, prepare an appropriate order.

10             MR. CHESNOFF:  Yes, sir, your Honor.

11             THE COURT:  Do it forthwith and let's

12   file it, and then you all can appeal my decision.

13             MR. CHESNOFF:  I know I won't be

14   filing, your Honor.

15             THE COURT:  Well, I know the government

16   will be, so that's fine.  That's why God created

17   San Francisco.

18             MR. CHESNOFF:  Have a nice afternoon,

19   your Honor.

20             THE COURT:  Yes, sir.  Thank you.  You,

21   too.

22

23        (Whereupon, the proceedings concluded.)

24

25

1                    I hereby certify that pursuant
to Section 753, Title 28, United States Code, the
2 foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
3 above-entitled matter.

4

5 Date:  August 26, 2012          /s/ Joy Garner
                                  JOY GARNER, CCR 275
6                                 U.S. Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25