UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

_____
                                        )
Mark B. Kabins,                         )
                                        )
                    Plaintiff,          )
                                        )  Case No.
         v.                             )  2:11-cv-01742-JCM-RJJ
                                        )
KATHLEEN SEBELIUS, in her Official      )
Capacity as the Secretary of the United States )
Department of Health & Human Services,  )
                                        )
                    Defendant.          )
_____ )

## <u>ORDER</u>

This matter involves the Plaintiff's challenge to the Secretary of Health and Human Services' (HHS) decision to exclude the Plaintiff, Mark Kabins, M.D., from continuing to participate as a physician or in any manner in various federal health care programs. This Court now vacates the Secretary's exclusion action and directs the Secretary to take certain actions in furtherance of reinstating Dr. Kabins' eligibility to participate in the relevant federal health care programs and to otherwise reverse the effects of the Secretary's exclusion decision.

In support of its Order, this court adopts the following findings and conclusions:

PROCEDURAL

1.      On November 23, 2009, Dr. Kabins pleaded guilty in the United States District Court for the District of Nevada to one count of misprision of felony in violation of 18 U.S.C. § 4. Rec. 303-309.

2.      The guilty plea was entered pursuant to a plea agreement between Dr. Kabins and the United States, dated October 30, 2009. Rec. 777-788. The plea was in answer to criminal information filed November 23, 2009. Rec. 789-792.

3.      During the plea colloquy, without objection from the government, the Court noted that "misprision [is] the failure to report an alleged crime *committed by others*." Rec. 285 (emphasis added).

4.    Both the Information and the Plea Agreement's factual statement indicate that the felony of others that Dr. Kabins did not report was "the crime of mail or wire fraud committed by [Howard] Awand and [Noel] Gage." Rec. 792, 786.

5.    Noel Gage is an attorney who came to represent Ms. Simon with respect to possible legal claims against her medical providers. Rec. 790.

6.    Both Noel Gage and Dr. Kabins had business relations with Howard Awand related to receiving work referrals, with Gage receiving referrals of possible personal injury clients and Dr. Kabins receiving potential patient referrals. Rec. 790-791.

7.    As a result of the common relationship that Dr. Kabins and Noel Gage had with Howard Awand, Noel Gage had a potential legal conflict of interest in representing Ms. Simon with respect to whether to sue Dr. Kabins. Rec. 791.

8.    In a "Letter of Complaint" that assisted Noel Gage in assessing a potential lawsuit on behalf of Ms. Simon, Dr. Kabins failed to revealGage's legal conflict of interest and that Gage and Awand were thereby engaged in mail and wire fraud. Rec. 791-792.

9.    At the time of sentencing, Melodie Simon stated that she "did not sue . . . Dr. Kabins because I did not think [he was] responsible for what had happened to me. I believe that Doctor Kabins saved my life." Rec. 321.

10.   An expert witness for the government, Dr. Alan Hamilton, has previously testified under oath (at the trial of Noel Gage) that Dr. Kabins did not cause harm to Melodie Simon. Rec. 384.

11.   At Dr. Kabins' sentencing, the District Court modified the normal conditions of probation to ensure that Dr. Kabins would be able to continue practicing medicine. Rec. 800-801.

12.   Judgment in Dr. Kabins' case was entered on January 22, 2010. Rec. 401-405.

13.   Over the government's objection, the Court subsequently granted Dr. Kabins' motion to terminate early his probation, Rec. 264-265. In its Orders granting Dr. Kabins' request, the District Court emphasized Dr. Kabins' offense lacked any connection to health care violations and the minor role played by Dr. Kabins. Rec. 264, 268.

14.   By letter dated January 31, 2011, the HHS Office of Inspector General (OIG) notified Dr. Kabins that he was excluded from Medicare, Medicaid, and all federal health care programs for five years. Rec. 775-776.

15.   Dr. Kabins appealed this exclusion to an HHS Administrative Law Judge ("ALJ"). Rec. 29-30, 74-119.

16. The ALJ sustained the exclusion of Dr. Kabins. Rec. 1-10.

17. Dr. Kabins then appealed to the HHS Departmental Appeals Board ("DAB"). Rec. 165-208.

18. The DAB affirmed the exclusion. Rec. 11-23.

19. The DAB asserted it applied a "common sense" test to determine whether an offense was committed "in connection with" the delivery of a health care service. Rec. 18-20.

20. The DAB characterized Dr. Kabins' argument by which Dr. Kabins noted that (a) the offense of Gage and Awand that he failed to report (mail and wire fraud designed to deprive the client of honest legal services) was no longer recognized as an offense in light of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), (b) Dr. Kabins' own conviction could not thereby be described properly as a conviction meeting the exclusion statutes terms as an attack on the validity of the underlying conviction rather than a challenge to the nature of the conviction. Rec. 21.

21. Dr. Kabins filed a motion for reconsideration in which he argued that the record should be re-opened to consider the new decisions of the District Court where it terminated early Dr. Kabins' probation. Rec. 250-268.

22. The Secretary "decline[d] to admit either order" of this District Court into the record. Rec. 26.

23. Dr. Kabins timely brought suit in this court, challenging the Secretary's decision in a multi-count complaint.

LEGAL

24. The statute and regulation under which Dr. Kabins was excluded are consistent and include four requirements to be satisfied for an exclusion to be warranted. The first two of those are not at issue (there must be a felony conviction and the felony must have occurred after August 21, 1996).

25. The second two are as follows: (a) the offense must have been a felony relating to "fraud, theft, embezzlement, breach of fiduciary responsibility or other financial misconduct" and (b) the offense of conviction must have occurred "in connection with the delivery of a health care item or service."

26. Addressing the last element first, the felony offense at issue in the instant case, Dr. Kabins' misprision of a felony, is not properly characterized by the Secretary as one that was "in connection with the delivery of a health care item or service." The plea colloquy made clear that Dr. Kabins was, fundamentally and uncontrovertibly, admitting to the crime of not reporting the crime of two others, Messrs. Awand and Gage. Both that plea colloquy and the accompanying plea

factual statement further make clear that the crime Messrs. Awand and Gage committed involved their failure to provide honest services to their client through their failures in the delivery of legal, not medical, services.

27.     While the phrase "in connection with the delivery of a health care item or service" may be broad, it cannot reasonably be stretched to embrace the conviction here. The phrase "in connection with the delivery of health care" is a term of limitation on the Secretary – it establishes Congress' intent that only a particularized set of felonies should subject a medical provider to exclusion. It also speaks in terms of the "delivery of health care" not in terms of "health care previously delivered." These limiting terms are not to be reasonably read to permit exclusion premised on what is a remote relatedness to some health care service delivery. Such a reading would be inconsistent with the statute's fundamental purposes which include providing the Secretary with exclusion authority, but exclusion authority that is carefully limited.

28.     While not concluding that any single one of the following factors are dispositive, the following points, among others, when taken together demonstrate that Dr. Kabins' conviction for misprision of a felony was not a conviction for an offense that occurred in connection with the delivery of health care: (a) no element of the crime of misprision includes delivery of health care as a necessary requirement; (b) the crime that Dr. Kabins failed to report, and which formed the basis of his misprision offense, involved Messrs. Gage (an attorney) and Awand (a consultant) failing to provide proper legal services to their client and thus defrauding her of honest *legal* services; (c) that failure in the delivery of legal services occurred long after Dr. Kabins provided surgical services to that same person, Ms. Melodie Simon; (d) the crime Dr. Kabins failed to report thus could have had no conceivable bearing on the quality, type, or extent of medical services delivered to Ms. Simon, or even the manner in which Dr. Kabins billed for those services, or otherwise influenced "the delivery" of Dr. Kabins' health care services no matter how broadly one may construe the term "delivery"; (e) there is no indication that Dr. Kabins improperly billed any federal health care program; and (f) there is no indication that the services he provided were deficient, indeed the Secretary had before her record evidence demonstrating that the government's own expert has testified that the services were appropriate, as had the patient in question.[1]

---

[1]    The Secretary has emphasized that she is owed complete deference in her statutory interpretation, and, in particular, deference to her judgment that the excluding official need only find some "common sense" connection between the offense and the delivery of health care. The Court is not persuaded that announcing that the statute requires nothing more than application of a "common sense" test does anything to further illuminate the factors that properly go into whether this conviction meets the statutory requirement to exclude a person from participation in all federal health care programs. Indeed, given that what "common sense" dictates can vary so significantly from person to person, a "common sense" test is either likely meaningless as a decisional tool or so susceptible to inconsistent application as to be arbitrary and capricious. Dr. Kabins' submissions in this case suggest apparent inconsistencies in the Secretary's application of this mandatory exclusion authority, a fact consistent with the latter possibility.

29.     While not essential to the Court's decision, the Court also notes that giving such breadth to the mandatory exclusion statute increases considerably the risk of selective enforcement of the exclusion sanction, targeting those defendants where the prosecuting authority and investigating agency may feel the criminal penalty was insufficient or was prematurely terminated.  In this case Dr. Kabins put forward many examples of convictions that appear to bear a much more direct connection to the delivery of health care than does his own conviction, and where, nonetheless, the convicted individual had not been excluded by the Secretary. This variable application of the exclusion sanction could be viewed as either arbitrary or, given the amorphous nature of the "common sense nexus" approach, lending itself to arbitrary and certainly selective enforcement.  This Court does not believe Congress had such an approach in mind when it mandated exclusions for only certain convictions.

30.     The misprision offense here, involving Dr. Kabins' failure to report the misconduct of others, is not itself an offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility or other financial misconduct." No element of misprision requires fraud, theft, embezzlement, breach of fiduciary responsibility or financial misconduct and no aspect of Dr. Kabins particular conduct in the offense involved the listed offenses.

31.     The Secretary, through the DAB, improperly mischaracterized Dr. Kabins' *Skilling*-based argument.  The statute of necessity requires each conviction relied upon to be characterized in order to determine whether it satisfies the statutory requirements.  It was not responsive to Dr. Kabins' argument to simply declare that his argument that *Skilling* now precludes describing or characterizing his conviction as related to fraud (and the other listed crimes) was, instead, an argument challenging the fact of having been convicted.  The two are not the same and the Secretary failed to respond to the argument Dr. Kabins did make. That argument thereby stands unrebutted by the DAB acting for the Secretary and serves as an alternative basis for this decision.

32.     The Court hereby incorporates as well, all statements and reasons provided by the Court in announcing its initial decision orally from the bench.  See Ex. 1, attached.

For the reasons set out above, it is hereby **ORDERED AND DIRECTED** that:

1.      The Plaintiff's motion for summary judgment is **GRANTED** on all counts of his complaint challenging the Secretary's decision to exclude Mark B. Kabins, M.D., from all federal  health care programs under 42 U.S.C. § 1320a-7(a);

2.      The Secretary's cross motion for summary judgment is **DENIED**;

3.     The Secretary's exclusion of Dr. Kabins is hereby **REVERSED** and that action **VACATED**;

4.     The Secretary is **DIRECTED** forthwith, and in any event no later than **TEN CALENDAR DAYS** after this ORDER, to take all steps necessary to make this ORDER effective and to reverse the effects of the Secretary's exclusion of Dr. Kabins, including but not limited to:

    a.     making appropriate notifications that Dr. Kabins' exclusion was reversed and vacated and that he was reinstated retroactive back to the effective date of the exclusion (February 20, 2011) in accordance with 42 C.F.R. §§ 1001.3003 and 1001.3005(c), including but not limited to notifications to any agency or party known to rely upon, or to have previously been given notice by the Secretary of, the exclusion;

    b.     removing Dr. Kabins from those lists, including the Office of Inspector General's List of Excluded Individuals and Entities, through which the Secretary identifies excluded persons, and

    c.     such other steps as reasonably are necessary to render the exclusion null and void.

**SO ORDERED** September 28, 2012.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

Submitted by:

 /s.  David Z. Chesnoff

David Z. Chesnoff

Ex. 1

*Kabins v. Sebelius*

2:11-CV- 1742- JCM-RJJ

Transcript of September 25, 2012 Hearing

Ex. 1

1      **UNITED STATES DISTRICT COURT**

2           **DISTRICT OF NEVADA**

3   **THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING**

4

5

6   MARK B. KABINS,

7         Plaintiff,

8   vs.                          **NO. 2:11-CV-1742-JCM-RJJ**

9   KATHLEEN SEBELIUS,              **MOTION HEARING**

10         Defendant.
                                   /
11   _____

12

13        **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14           TUESDAY, SEPTEMBER 25, 2012

15                 10:00 A.M.

16

17

18   **APPEARANCES:**

19   For the Plaintiff:    DAVID CHESNOFF, ESQ.
                           RICHARD SCHONFELD, ESQ.
20                         SARALIENE DURRETT, ESQ.

21   For the Defendant:    ROGER WENTHE, ESQ.
                           JILL WRIGHT, ESQ.
22

23

24

25   Reported by:  Joy Garner, CCR 275
                   Official Federal Court Reporter

1    **LAS VEGAS, NEVADA, TUESDAY, SEPTEMBER 25, 2012**

2                          **10:00 A.M.**

3                          *    *    *

4                    **P R O C E E D I N G S**

5

6         THE CLERK:  Mark Kabins versus Kathleen

7    Sebelius, 2:11-CV-1742-JCM-RJJ.  This is the time

8    set for a motion hearing.

9                    Counsel, please note your

10   appearances.

11        THE COURT:  Mr. Chesnoff.

12        MR. CHESNOFF:  Good morning, your

13   Honor, David Chesnoff appearing with my client,

14   Dr. Kabins, along with Richard Schonfeld and

15   Saraliene Durrett of my office.

16        THE COURT:  All right, thank you.

17        MR. WENTHE:  Your Honor, Roger Wenthe

18   on behalf of the United States, and with me is

19   Jill Wright who is an attorney with the

20   Department of Health and Human Services Office

21   and counsel for the Inspector General.

22        THE COURT:  All right, thank you.

23                    All right, I've reviewed this

24   with my brain trust.  Let me tell you what I'm

25   inclined to do and then I'll give everyone a

1   chance to argue as you see fit. We've all heard

2   the saying, hard cases make bad law, and this is

3   a hard case. At various times over the last

4   twenty-four hours, I've been I'm going to rule

5   this way, and then I'll look at the case, look at

6   this again, the facts here, I'm going to rule the

7   other way. So I've gone back and forth on this

8   with my brain trust. This is an interesting

9   case, but it's certainly not clear-cut in my

10   mind.

11            You pronounce your last name

12   Kay-bins (phonetic), right, Doctor?

13       THE PLAINTIFF: Correct.

14       THE COURT: I didn't want to

15   mispronounce your name. There's nothing more

16   irritating than have somebody mispronounce your

17   name continually. First of all, Dr. Kabins had

18   been convicted of a crime, you know, and so let's

19   put that on the table and that's a terrible thing

20   and you can say whatever you want to about that,

21   but put that on the shelf. That's just a given.

22   He's been excluded here by the Secretary Sebelius

23   under the exclusion statute.

24            It seems to me the purpose of

25   the exclusion statute is to protect the

1  government from people who have cheated the

2  government program, and you see if you look at

3  the -- I've had the brain trust look at some of

4  the people who have been excluded, and if

5  somebody committed an actual fraud or

6  embezzlement or some sort of thing like that,

7  cheating a government program, it's a --

8              And let me have a fictional Dr.

9  Mahan who sets up his practice and, you know,

10  rips off Medicare and embezzles or overcharges,

11  or whatever, and so he pleads guilty to some

12  crime and serves a couple of years in jail, and

13  then he's out again.  And so Dr. Mahan's uncle is

14  the Chairman of the State Medical Board, or

15  whatever, so he gets re-licensed and he says,

16  okay, Secretary Sebelius, you have to deal with

17  me again.

18              Do we really?  Do we really have

19  to?  It's almost like fool me once, shame on you;

20  fool me twice, shame on me.  The government still

21  has to deal with this guy?  And that's what the

22  statute I think is designed to prevent that if

23  somebody -- you're just an embezzler, or cheater,

24  or whatever, and the government can exclude, but

25  that's the way the statute is.

1                    Let me give you another example

2     again with Dr. Mahan.  He sells his house, and he

3     sells the house and commits a fraud in selling

4     the house, misrepresents something.  Can he be

5     excluded under the statute?  No, because the

6     statute is drawn so that it's got to be in

7     connection with health care services.  I'll get

8     into that in just a minute more, but so Dr. Mahan

9     commits a fraud selling his house.  That doesn't

10    give the grounds to the Secretary to exclude him.

11                    Now, here Dr. Kabins was

12    convicted of misprision and failure to report a

13    felony.  If you look at the -- the -- well, first

14    of all, look at the statute, the exclusion

15    statute and the regulations that the Secretary

16    has promulgated, the statute didn't say is a

17    little bit unwieldy which is so unusual to think

18    that the congress people would draft an unwieldy

19    statute, but if you look at the regulations, I

20    think they pretty clearly follow the statute.

21                    We've got four requirements and

22    so everybody understands I'm speaking now from 42

23    CFR, Section 1001.101(c).  Four requirements:

24    The individual must have been convicted of a

25    felony, and that's true of Dr. Kabins here; the

felonious conduct must have occurred after August
21, 1996, that's true here. So we're really
focusing on the third and fourth elements. The
felony offense must have been related to fraud,
theft, embezzlement, breach of fiduciary
responsibility, or other financial misconduct,
and the felony offense -- number four, the felony
offense must have been in connection with the
delivery of a health care item or service.

And if you look at what happened
here, at Dr. Kabins's conduct here, the
misprision was committed in connection with legal
services, not medical services. This occurred
well after the medical services were rendered and
all indications are that there's no complaint
about the medical services. And I say that
somewhat advisedly because after the fact, you
know, people's memories is better -- and I
shouldn't say is better -- may have been altered
by subsequent events.

For example, if Dr. Kabins, and
I don't know this, but if he settled on the side
with Ms. Simon, and I don't know whether that
happened or not, but suddenly she says, oh, that
terrible Dr. Kabins. And then, oh, yes, he was

1  wonderful and, yes, all his services were

2  wonderful and blah, blah, blah.

3            I mean so put that aside.  I

4  mean I understand the credibility of witnesses is

5  questionable in something like this, but it

6  appears that the medical services were fine.

7  There's no question about the quality of the

8  medical services.  So the misprision occurred

9  with legal services, not medical services.

10           Now, the -- you can go with the

11 regulations rather than the statute, but it just

12 is clearer.  The felony offense must have been

13 related to fraud, theft, embezzlement, breach of

14 fiduciary responsibility, or financial

15 misconduct.  This was, like I say, it was legal

16 services.  I don't know that -- however you want

17 to characterize it, fraud, and certainly fraud, I

18 don't know, maybe.  No theft, embezzlement,

19 breach of fiduciary responsibility, it may be, or

20 other financial misconduct.  So number three is a

21 maybe.

22           Number four, the felony offense

23 must have been in connection with the delivery of

24 a health care item or service, and here it's just

25 not.  I mean there's a medical service underlying

1    everything, of course, because he's a doctor and
2    that's what we're dealing with, but I just don't
3    see that the exclusion statute applies here.  I'm
4    concerned a little bit, too, about selective
5    prosecution.
6                    If we had a case where every
7    doctor who's convicted of a felony is subject to
8    exclusion, then, you know, here we go.  I'm
9    sorry, Doctor, but that's the way it works, or
10   whatever, you deal with that and you have
11   different arguments I'm sure, but I'm concerned,
12   too, about selective prosecution that a
13   bureaucrat somewhere decides here's what we're
14   going to do, we're going to do this, we're going
15   to do that.  We're going to prosecute this
16   doctor, not that doctor, and that's always
17   troubling to the Court if there's no uniformity
18   with the decision to prosecute.
19                    Let's see, that's the memo in
20   support of your motion for summary judgment, the
21   plaintiff, and then at page 20 you list some
22   doctors that plead guilty to -- here's one the
23   misprision, the various felonies, and they were
24   not -- they were not excluded.  And what's the
25   rational basis for excluding Dr. Kabins?  I just

1   don't see it anywhere.  So honestly this is a
2   close question in my mind.  I've gone back and
3   forth on it, but I just -- I come back to I think
4   it's the misprision was in connection with
5   rendering of legal services or providing legal
6   services and not the medical services.
7                 There was no question -- I
8   haven't seen any question at all about the
9   medical services.  They apparently were
10  appropriate and certainly Ms. Simon is not
11  complaining about that, although that doesn't
12  carry the day.  As I've said, you know, it's a
13  matter of credibility and we can say, well, I
14  don't believe her, but I had the brain trust
15  quickly try to identify doctors who had been
16  excluded and they had been doctors who, like I
17  said at the very beginning, like our fictional
18  Dr. Mahan who committed overcharging or
19  embezzlement or theft of some sort from the
20  Medicare program, but it seems to me that Dr.
21  Kabins's conduct here, his conviction here, was
22  not related to fraud or other misconduct in
23  connection with revision of a medical service.
24  So what I'm inclined to do is to grant summary
25  judgment to the plaintiff.

1            Now, I'll give you -- do you
2  want to talk me out of that, Mr. Chesnoff?
3         MR. CHESNOFF:  I was just going to say,
4  your Honor, I don't want to talk -- we worked
5  very hard, my colleagues, on the pleadings and
6  obviously you've studied them along with your
7  staff, so I don't want to talk myself out.  I
8  think the only thing that I would add is this,
9  your Honor.  I think that one of the things that
10  really pushes it to our direction is that this
11  court through Judge Quackenbush, who I consider
12  one of the finest jurists I've ever appeared in
13  front of in all my years, has specifically said
14  on several occasions pointedly that what Dr.
15  Kabins was convicted of had nothing to do with a
16  health care violation, and he was the finder of
17  fact as to the plea and as to the companion
18  cases.
19             And why that's so important,
20  your Honor, is he went out of his way to say that
21  he wanted Dr. Kabins to continue to provide
22  medical services to the people of the state of
23  Nevada and to allow an uncontrolled federal
24  bureaucrat to basically disregard the clear
25  statutory elemental requirements and you, as a

1   sitting federal judge, and me who practices an

2   area of the law where the elements are crucial,

3   then unless those elements are met, your decision

4   is righteous and clear and it is completely

5   consistent with what Dr. Kabins pled to.

6             And as you said, the legislative

7   intent here was not to punish a doctor who

8   committed an -- did an operation well before the

9   honest service fraud occurred and involved legal,

10   not medical and, therefore, this kind of knee

11   jerk reaction that Dr. Kabins received and

12   basically kicking sand in the face of Judge

13   Quackenbush who pointedly, pointedly, wanted Dr.

14   Kabins to do what he does which is to serve

15   people.

16             The effect of what the Secretary

17   did here doesn't just mean that Dr. Kabins

18   doesn't get paid from Medicare and Medicaid.  It

19   has a real affect on his entire practice,

20   including his right to practice in certain

21   hospitals.  So the Court would be following the

22   direction of two branches of government, the

23   legislative in enacting the law, and your brother

24   judge in his interpretation of what this

25   conviction meant.

1              So with that said, your Honor, I

2     don't believe under any standard proffered by the

3     Secretary they meet the elemental requirement to

4     have banned him, and I ask that you put your

5     imprimatur on what you've indicated is your

6     intention, your Honor.

7              THE COURT:  All right.

8              MR. CHESNOFF:  Thank you.

9              THE COURT:  And I'll just say if Judge

10    Quackenbush had found to the contrary, he didn't

11    look at this as closely as I did.  I mean I'm

12    glad that we agree with each other, but I looked

13    at it independently and closely.

14              Mr. Wenthe, I'll be glad to hear

15    anything you have to say, sir.

16              MR. WENTHE:  Thank you, your Honor.

17              THE COURT:  Yes, sir.

18              MR. WENTHE:  I think that what's

19    necessary here is to return to the first

20    principle of why this statute exists.  Congress

21    enacted this exclusion statute because Congress

22    can decide who the federal government will do

23    business with and who it will not do business

24    with, and this provision that we're dealing with

25    today was added in 1996 because the existing

1  provisions were considered not broad enough to
2  cover the types of people who the government does
3  not want to do business with.
4              Before 1996, it already had a
5  provision separate from this one that says
6  anybody who defrauds the Medicare program or
7  overcharges the Medicare program will be
8  excluded, must be excluded.  This provision was
9  added because that wasn't broad enough so that
10 what you maybe have had your brain trust look at
11 is cases under that previously existing, and
12 still existing, provision.
13             This provision was added so that
14 anyone who commits any kind of -- and not just
15 fraud -- but, as you said --
16        THE COURT:  -- theft, or embezzlement,
17 or other financial misconduct, or breach of
18 fiduciary duty.
19        MR. WENTHE:  There we go -- and breach
20 of fiduciary duty.
21        THE COURT:  Yeah.
22        MR. WENTHE:  That's a very broad range
23 of things, and we have to ask ourselves how can
24 those things occur in connection with the
25 delivery of a health care item or service because

1  that's the other thing you have to have.  And I

2  think if you're going to read this statute to say

3  the health care item or service has to come after

4  the fraud, or embezzlement, or theft, or

5  whatever, which is what I think you're saying.

6          THE COURT:  But, no, no, no, it's got

7  to come in connection with that.  The way I read

8  the statute, Mr. Wenthe, is the fraud, or theft,

9  or embezzlement has to come in connection with

10  the provision of a medical service.

11          MR. WENTHE:  In connection with --

12          THE COURT:  Here it occurred well after

13  the provision of the medical service.

14          MR. WENTHE:  And Congress was

15  deliberately broad by using the words "in

16  connection with."  What you were saying is that

17  you're --

18          THE COURT:  And I agree.  I mean that's

19  very broad language and we look at the statute

20  "in connection with" as very broad, but it's got

21  to be in connection with the provision of the

22  medical service.  This occurred -- here it

23  occurred well after, did it not, well after the

24  medical service was provided?

25          MR. WENTHE:  But, see, when you're

1    saying well after, then you're saying in

2    connection with only means before the medical

3    service is provided.

4            THE COURT:  No, no, to me it means

5    contemporaneously generally, and I can't say -- I

6    mean it's possible that it would arise -- some

7    fraud would arise later.  I mean, for example,

8    with billing.  For example, let's say that --

9    we'll go back to Dr. Mahan.  Dr. Mahan performs a

10   service and then he doesn't bill for it for three

11   months, but there's some -- some -- he

12   overcharges, he triple bills or something three

13   months later, is that -- but it's in connection

14   with the provision of the medical service.  So I

15   mean the temporal aspect of the time aspect of it

16   is not necessarily controlling.

17            There's got to be a connection

18   with the provision of the medical service not

19   something related to a medical service because

20   that way everything a doctor did would be open to

21   question.  For example, Dr. Mahan selling his

22   house and committing a fraud there, you know,

23   overcharging somebody or hiding a defect on a

24   house or something of that nature.  You agree, do

25   you not, that Dr. Mahan selling his house and

1   committing a fraud the Secretary can't be

2   excluded --

3           MR. WENTHE:  Because there's no medical

4   service anywhere in that scenario, your Honor.

5           THE COURT:  That's right.  He's a

6   doctor, but there's no medical service there.

7           MR. WENTHE:  Now, the very question we

8   are discussing right now is one that the Court is

9   foreclosed from getting into.  The Court cannot

10  substitute its judgment for that of the agency on

11  this question.  This is a question of statutory

12  interpretation, and your Honor wants to construe

13  "in connection with" to mean very closely related

14  in time.

15          THE COURT:  No, no, that's not

16  necessarily true, Mr. Wenthe.

17          MR. WENTHE:  That's just what you said

18  to me, your Honor, and the agency has said --

19          THE COURT:  Well, wait, wait, wait,

20  don't mischaracterize what I'm saying or doing.

21  I didn't say that it had to be very closely

22  related in time, did I?

23          MR. WENTHE:  Yes, you did, but go ahead

24  and tell me what -- what you --

25          THE COURT:  No, I did not.  I most

1  certainly did not and don't mischaracterize what

2  I say.

3          MR. WENTHE:  Tell me what you think the

4  statute means, your Honor.

5          THE COURT:  Well, I've told you that

6  already, Mr. Wenthe, and I'm not going to have

7  you mischaracterize what I said.  We said that it

8  could be three months later, didn't I?  Were you

9  listening?  Don't smirk at me.  Don't smirk at

10  me, Mr. Wenthe.

11          MR. WENTHE:  I'm smiling at you, your

12  Honor.

13          THE COURT:  What?  What?  Don't smirk

14  at me.  You're going to be in trouble, sir.

15  We're in recess.

16                  (Recess taken from

17                  10:20 a.m. to 10:25 a.m.)

18          THE COURT:  We are back in session.

19  Thank you.  You may be seated.

20                  All right, resume your argument,

21  Mr. Wenthe.

22          MR. WENTHE:  I apologize to the Court.

23  I meant no disrespect.

24          THE COURT:  Well, it certainly appeared

25  disrespectful.  Contentious, that's the way it

1   appeared, Mr. Wenthe.  Smirk away all you want.

2   Now go ahead and let me hear the rest of your

3   argument and smirk all you want.

4           MR. WENTHE:  I mean no disrespect to

5   the Court.

6           THE COURT:  Yes, you do.  You most

7   certainly do.  You were smirking at me.  You

8   mischaracterized what I said.  That's fine.

9   Continue your argument.

10          MR. WENTHE:  The agency has construed

11  the words "in connection with" over the course of

12  many years and they have applied that

13  construction over and over and over, and they are

14  permitted by Congress and by case law to do so.

15  Their construction of those words "in connection

16  with" means a common sense connection.  They

17  found in this case that the health care service

18  provided by Dr. Kabins which was a service

19  performed on Melodie Simon for which he admitted

20  in his plea agreement that he could be held to

21  have committed malpractice by a viable lawsuit by

22  her.  He admitted that.

23          THE COURT:  Well, he disagrees.  He

24  disagrees with what you're saying, but that's

25  fine.  Go ahead.  It's your argument.

1          MR. WENTHE:  It is my argument, and it
2    is his admission and your Honor will find his
3    admissions in his plea agreement which begins at
4    page 777 of the record and in particular the
5    facts admitted under oath by him which begin at
6    784 of the record and in Subparagraph (d) of
7    those facts appears this statement:  Accordingly,
8    Dr. Kabins believed that Ms. Simon could bring a
9    viable lawsuit against him arising out of
10   provision of a health care item or service to
11   her.  And he escaped being sued for malpractice
12   by covering up the fraud committed by Howard
13   Awand and Noel Gage to which he also pled that he
14   acknowledged that those men had committed the
15   crime of fraud and that he concealed it.
16              So there is in the agency's view
17   a common sense connection between his provision
18   of that health care service for which he could
19   have been sued for malpractice and his
20   concealment and his conviction for concealment of
21   the fact of fraud that got him out of being sued
22   for malpractice for that health care item for
23   service.
24              The agency decided in its --
25   both its administrative law judge decided and its

1   DAB, Department Appeals Board, that construing

2   its statute as it had for many, many years "in

3   connection with" was satisfied in this case.  The

4   Court wishes to adopt a different interpretation

5   of the words "in connection with" than what the

6   agency has adopted.  The Court is not permitted

7   to do so by the doctrine of Chevron deference.

8                   When the agency has an ambiguous

9   statute to apply, the agency is afforded the

10  discretion to choose within that range of

11  reasonable constructions of that statute which

12  one it will apply and it has done so.  The Court

13  apparently is saying that the construction by the

14  agency here is completely outside that reasonable

15  range of reasonable interpretations of the words

16  "in connection with."

17                  That seems highly unlikely since

18  we have cited to you the Supreme Court's case of

19  Morales in which the Supreme Court construed the

20  words "in connection with" and relating to the

21  statute and gave them the exact same meaning that

22  the agency gives them and has given those words

23  for many years.  And so if the Court disagrees

24  with the Supreme Court's Morales decision and

25  wishes to overrule it --

           THE COURT:  Okay, cut it again, cut the
crap, cut the contentious attitude, all right?
I'm not going to overrule the Supreme Court.  Do
you really think I'm going to overrule the
Supreme Court, Mr. Wenthe?  I can't hear you.
           MR. WENTHE:  Of course not, of course
not, of course not.
           THE COURT:  What are you arguing --
nothing -- your whole attitude today has been
nothing but contentious.
           MR. WENTHE:  That's incorrect, your
Honor.
           THE COURT:  No, that's not incorrect,
sir.  Nothing but contentious.  You mean I'm
going to overrule the Supreme Court.  Don't be
stupid.
           MR. WENTHE:  And that's the point.
           THE COURT:  Try to make an argument
that's coherent and not -- you sound like a
little kid on the playground.  I've indicated I
might not rule in your favor and so you give a
boo-hoo-hoo and try to -- yeah, go ahead and
smirk some more.  That's funny.  Go ahead, go
ahead, let me hear some more of your argument.
           MR. WENTHE:  I think that I've stated

1  it as clearly as I can.  The agency --

2          THE COURT:  But you say your contempt

3  very clearly.  That's what you did.  Go ahead.

4          MR. WENTHE:  The agency has decided

5  what these words mean.

6          THE COURT:  So I can't question the

7  agency.  I have to just bow down to the agency

8  and rubber stamp it.  That's Mr. Wenthe's

9  position.  Anything else?  That's what you just

10  told me.  I'm bound by that.  I can't question

11  that at all.  Now what's your next argument?

12          MR. WENTHE:  I think, your Honor, that

13  if anyone reads the record here, they will never

14  see the words bow down coming out of my mouth.

15  They came only out of yours.  Now, the other

16  point that has to be dealt with here that

17  apparently has already -- well, it was not

18  addressed by anybody yet today -- and that's

19  relating to, this conviction has to be relating

20  to fraud.  I don't see how that could be

21  questioned here.  The conviction was for

22  concealment of a fraud.

23              So the only argument really that

24  Dr. Kabins has to oppose that is to say that we

25  have to read the statute so that fraud only

1  involves financial misconduct fraud and,

2  therefore, because this is not a financial

3  misconduct case, this is not a conviction

4  relating to fraud.  I don't see that.  I think

5  that -- and particularly not when we have the

6  Friedman versus Sebelius case which was just

7  decided by the DC Circuit Court of Appeals this

8  year, and we offered that to you in our

9  supplemental authorities.

10             It went through a very lengthy

11  discussion of the purpose, history, and text of

12  the statute and said, no, Congress did not mean

13  to restrict this statute to just financial

14  misconduct fraud.  It's any kind of fraud.  And

15  so it would be improper to read the statute that

16  way as Dr. Kabins wants to and so we think that

17  part of it is satisfied.  And really that's the

18  only two issues that there are here having the in

19  connection with health care item or service and

20  had to be relating to fraud.

21             Those were the two contested

22  issues before the agency, and they are the only

23  two issues here and for the reasons we've stated

24  we feel they are both satisfied very amply here

25  when the statute is read in accordance with

1 Chevron deference which applies to agency
2 interpretations of their own statutes when they
3 are ambiguous.  So if the Court has no other
4 questions, that's all I have.
5         THE COURT:  All right.  Thank you.
6             Ma'am, did you have anything or
7 any argument you wanted to make?
8         MR. WENTHE:  Are you asking counsel?
9         MS. WRIGHT:  No, sir, I don't.
10        THE COURT:  No?
11            All right, I'll give you a
12 chance to reply.
13        MR. CHESNOFF:  Just briefly, your
14 Honor.  In review of our pleadings, we were able
15 to distinguish the argument that they made about
16 Morales.  Morales doesn't apply.  As far as
17 Chevron goes, your Honor, the Supreme Court has
18 said you are allowed to decide whether it's
19 reasonable, and that's what I believe the Court
20 was attempting to do.
21            I would also point out as the
22 Court did when the Secretary stands up and says
23 that they've been applying this uniformly
24 regularly, one only has to look at the list of
25 doctors who we put in our pleadings who actually

1  were engaged in conduct involving medical

2  services.  Dr. Kabins has performed this surgery

3  long before and that's why the temporal argument

4  is so important, and he would have performed the

5  surgery regardless of any scheme -- excuse me,

6  I'm a little excited myself actually -- any

7  scheme that Gage and the other gentleman engaged

8  in.  He did the surgery.

9              It had nothing to do with their

10 scheme to commit item or service fraud which is

11 not a medical fraud and the statute also talks

12 about, and especially the Ninth Circuit, your

13 Honor, in the context of the fraud having a

14 financial component.  So for all the reasons that

15 we've stated in our brief and the arguments today

16 and the fact that the Secretary has relied on law

17 that's not appropriate, including the supplements

18 they filed, the Fourth Circuit case and the DC

19 Circuit case, those cases involve people who

20 actually engaged in the actual fraud themselves.

21             And we're aware one of the

22 elements that the Court has been focusing on was

23 consciously met by the people involved.  In our

24 case if you analyze the elements the Court

25 correctly stated that one and two exist, three is

1    questionable.  And, of course, we've argued it

2    doesn't apply or hasn't been met, but most

3    importantly element number four has never been

4    established as a basis for the really draconian

5    and isolated punishment that Dr. Kabins has

6    suffered totally inconsistent with the

7    Secretary's decisions in other doctors' cases.

8                     Thank you.

9              THE COURT:  All right.  Thank you.

10                   As I said at the beginning, it's

11   a close case.  Did you want to add something, Mr.

12   Wenthe?  Go ahead.

13             MR. WENTHE:  You know, I didn't get a

14   chance to talk about the other doctors.  Would

15   your Honor permit me?

16             THE COURT:  Of course.

17             MR. WENTHE:  Because your Honor did

18   raise that in your opening remarks and I wanted

19   to --

20             MR. CHESNOFF:  Actually the Secretary's

21   lawyer raised it by saying that they do this

22   fairly in all cases.

23             THE COURT:  Go ahead.

24             MR. WENTHE:  Fair enough, but this

25   whole question of other doctors who are getting

excluded, I do want to address that.  We did

address that in our briefs obviously, but I think

your Honor is looking at that as though there's

some unfairness going on.  The statute is

mandatory.  The statute is mandatory.  When we

find a doctor, and the doctor comes to our

attention and a hearing is held and all these

statutory elements are satisfied, that doctor

must be excluded.  The agency has no discretion

not to exclude him.

          Now, the fact that other people

may be out there who haven't been caught yet, we

don't have an explanation for that.  The record

does not give us an explanation because the

agency excluded all of that evidence as being

irrelevant.  If your Honor feels that that issue

needs some more exploration by the agency that

they should take that into account that that is

relevant to their decision, then the thing to do

is to remand this to the agency for further

factual findings because they didn't make any

findings of fact on this.

          They excluded it all as being

irrelevant, and I think they were right to

exclude it as irrelevant, but if you disagree

1  with that and feel that they should consider it,
2  it really is a matter for the agency to consider
3  on remand.  So I just wanted to make that one --
4          THE COURT:  All right.  Thank you.
5              As I said at the outset, this is
6  to me a close question.  It's a very close
7  question, but I think on balance the plaintiff is
8  entitled to summary judgment.  So, if you would,
9  Mr. Chesnoff, prepare an appropriate order.
10         MR. CHESNOFF:  Yes, sir, your Honor.
11         THE COURT:  Do it forthwith and let's
12  file it, and then you all can appeal my decision.
13         MR. CHESNOFF:  I know I won't be
14  filing, your Honor.
15         THE COURT:  Well, I know the government
16  will be, so that's fine.  That's why God created
17  San Francisco.
18         MR. CHESNOFF:  Have a nice afternoon,
19  your Honor.
20         THE COURT:  Yes, sir.  Thank you.  You,
21  too.
22
23     (Whereupon, the proceedings concluded.)
24
25

1              I hereby certify that pursuant
   to Section 753, Title 28, United States Code, the
2  foregoing is a true and correct transcript of the
   stenographically reported proceedings held in the
3  above-entitled matter.

4

5  Date:  August 26, 2012        /s/ Joy Garner
                                 JOY GARNER, CCR 275
6                                U.S. Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25